JULIE RAYE, ESQ.
Nevada Bar No. 10967
THE GRACE LAW FIRM
8530 W. Charleston Blvd., Suite 100
Las Vegas, Nevada 89117
Telephone: (702) 478-7600
Facsimile: (702) 366-1653
efilings@TheGraceLawFirm.com
Attorney for Plaintiffs

MARIAM BLUE, as Special Administrator of the Estate of STEPHEN BURRELL; LISA L. CARROLL on behalf of her wards SMB, and SFB, individually

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA (LAS VEGAS)

| | |
|---|---|
| MARIAM BLUE, individually, and as Special Administrator of the Estate of STEPHEN BURRELL; LISA L. CARROLL on behalf of her wards SMB, and SFB, individually<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LAS VEGAS, a political subdivision of the State of Nevada; MICHELE FREEMAN, Former Chief of City of Las Vegas | CASE NO.:<br><br>COMPLAINT FOR DAMAGES<br><br>1. Substantive Due Process (42 U.S.C. § 1983) Violations of the Fourteenth Amendment Due Process Clause and Deprivation of Familial Relations<br>2. Municipal Liability for Unconstitutional Custom or Policy in Violation of The Fourteenth Amendment Due Process Clause (42 U.S.C. § 1983) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Department of Public Safety, in her official and individual capacities, ROBERT STRAUBE, Deputy Chief of Detention Services for City of Las Vegas Department of Public Safety, LIEUTENANT SHARON MEADS, LIEUTENANT CESAR LANDROVE, LIEUTENANT VENUS THOMPSON, LIEUTENANT DANIELLE DAVIS, in their official and individual capacities, WELLPATH CARE, F/K/A CORRECT CARE SOLUTIONS, individually; OFFICER DORADO, individually; OFFICER D. CHAPARRO, individually; OFFICER M. WASHINGTON, individually; SGT M. PARKER, individually; SGT. C. SMITH, individually; SGT. WEDIG, individually; SHAWN MAPLETON, individually; MICHAEL POPOV, individually; VIRGILIO PADILLA, individually; FRANCES BODDIE-SMALL, individually; EBONYMICHELLE D GARNER, individually; PSYCH RN DEE,

**3.   Disability Discrimination § 504 of the Rehabilitation Act Of 1973, 29 U.S.C. § 794(A), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131; Et Seq Discrimination § 504 of the Rehabilitation Act Of 1973, 29 U.S.C. § 794(A), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131; Et Seq.**

**4.   Municipal Liability-Ratification (42 U.S.C. § 1983)**

**5.   Disability Discrimination § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(A), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131; Et Seq.**

**6.   Negligence (Wrongful Death)**

**7.   Neglect of A Vulnerable Person**

**8.   Medical Malpractice**

**9.   Deliberate Indifference to a Serious Medical Need in Violation of the Fourteenth Amendment Due Process Clause (42 U.S.C. § 1983)**

*Exhibit "A"* Redacted Death Certificate

*Exhibit "B"* Order Appointing Special Administrator

1  individually; REGINA ELIZONDO,
2  individually, and DOES 1-35,
3  inclusive all of whom are sued in
4  their individual capacities.
5
6           Defendants.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Exhibit "C"* Affidavit in Support of
Medical Malpractice Claim

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES**

Plaintiffs MARIAM BLUE, individually, and as Special Administrator of the Estate of STEPHEN BURRELL along with heirs SMB, and SFB, through their Legal guardian LISA L. CARROLL for their Complaint against Defendants CITY OF LAS VEGAS, MICHELE FREEMAN, ROBERT STRAUBE, LIEUTENANT SHARON MEADS, LIEUTENANT CESAR LANDROVE, LIEUTENANT VENUS THOMPSON, LIEUTENANT DANIELLE DAVIS, WELLPATH CARE, F/K/A CORRECT CARE SOLUTIONS, OFFICER DORADO, OFFICER D. CHAPARRO, OFFICER M. WASHINGTON, SGT M. PARKER, SGT. C. SMITH, SGT. WEDIG, LIEUTENANT LANDROVE, SHAWN MAPLETON, MICHAEL POPOV, VIRGILIO PADILLA, FRANCES BODDIE-SMALL, EBONYMICHELLE D GARNER, PSYCH RN DEE, REGINA ELIZONDO, , and DOES 1-35, inclusive, allege:

**INTRODUCTION**

1.  On January 12, 2019, STEPHEN BURRELL, Decedent (hereinafter referred to as "STEPHEN"), a 26-year-old African American Male, weighed 174 pounds when booked into the custody and care of the City of Las Vegas Detention Center.

2.  On March 8, 2019, STEPHEN, after detained in the City of Las Vegas Detention Center for fifty-six (56) days, died of starvation. At his autopsy, he weighed just 126 pounds.

3.  Former Director of Public Safety Chief MICHELE FREEMAN and Deputy Chief of Detention SERVICES ROBERT STRAUBE managed the City of Las Vegas Detention Center where their employees logged and watched as STEPHEN starved to death deliberately indifferent to STEPHEN'S humanity and constitutional rights.

4.   This civil rights action seeks compensatory and punitive damages from Defendants for their violations of STEPHEN'S civil and human rights under the United States Constitution. Plaintiff MARIAM BLUE is his surviving Mother, an heir, and sues as the Special Administrator of STEPHEN'S estate. Likewise, heirs, SMB and SFB, are STEPHEN'S surviving minor children, and they are suing in their individual capacity through their legal guardian, Plaintiff LISA L. CARROLL.

## **PARTIES**

5.   At all relevant times, STEPHEN was an individual residing in the County of Clark, Nevada. At all relevant times, STEPHEN suffered from and/or was diagnosed with mental and emotional impairments, including but not limited to schizophrenia, making him a protected individual under the Americans with Disabilities Act (ADA).

6.   Plaintiff MARIAM BLUE, who resides in Clark County, Nevada, files suit in her capacity as Court-appointed Special Administrator of STEPHEN'S estate. In this capacity, MARIAM BLUE also seeks all permissible damages under Nev. Rev. Stat. § 41.085 and Nev. Rev. Stat. § 41.100 as well as under the United the Fourth and Fourteenth Amendments to the U.S. Constitution.

7.   STEPHEN is survived by his two minor children SMB, and SFB, both of whom reside in Riverside County, California, and sue, through their legal guardian LISA L. CARROLL, in their individual capacity, as the surviving children of STEPHEN and seek and seeks wrongful death damages under federal and state law as well as all permissible damages under Nev. Rev. Stat. § 41.085 and Nev. Rev. Stat. § 41.100 as well as under the Fourth and Fourteenth Amendments to the U.S. Constitution.

8.   At all times relevant every named Defendant acted under the color of state law.

9.  Defendant CITY OF LAS VEGAS is a political entity and political subdivision of Clark County and the State of Nevada formed and operating under Nevada Revised Statutes and, responsible for operating the Las Vegas Detention Center.

10. Defendants MICHELE FREEMAN, the former Chief of the Las Vegas Department of Public Safety and Deputy Chief ROBERT STRAUBE had the duty to ensure safety and needed medical care were provided to STEPHEN and were involved in denying him safety, security, and medical care despite obvious needs.

11. At all relevant times Defendants MICHELE FREEMAN, ROBERT STRAUBE, Correction Lieutenants SHARON MEADS (Day Shift) CESAR LANDROVE (Day Shift) VENUS THOMPSON (Night Shift) DANIELLE DAVIS (Classification/LEST/Medical/PREA/OHC) and DOES 16-20 (collectively "SUPERVISORY DEFENDANTS") acted within the course and scope of their respective duties as managerial, supervisorial, and policymaking employees of Defendant CITY OF LAS VEGAS. They are all sued in their individual capacities.

12. SUPERVISORY DEFENDANTS had the duty to ensure safety and needed medical care were provide to STEPHEN, and were involved in denying him safety, security, and medical care despite obvious needs. They are sued in their individual capacities.

13. Defendants OFFICER DORADO, OFFICER D. CHAPARRO, OFFICER M. WASHINGTON, SGT M. PARKER, SGT. C. SMITH, SGT. WEDIG, LIEUTENANT LANDROVE, and all Co-Defendants as unknown DOES 1-15, (collectively "CORRECTIONAL OFFICER DEFENDANTS") were assigned to or responsible for STEPHEN'S housing unit at the City of Las Vegas Detention Center and thus had a legal duty to ensure STEPHEN'S health and safety.

14. CORRECTIONAL OFFICER DEFENDANTS where at all times mentioned in this Complaint officers employed by Defendant CITY OF LAS VEGAS and are sued in their individual capacities only.

15. At all relevant times, CORRECTIONAL OFFICER DEFENDANTS and SUPERVISORY DEFENDANTS were duly authorized employees and agents of the CITY OF LAS VEGAS, who were acting under the color of law within the course and scope of their respective duties as Correctional Officers and with the complete authority and ratification of their principal, Defendant CITY OF LAS VEGAS.

16. At all relevant times, CORRECTIONAL OFFICER DEFENDANTS and SUPERVISORY DEFENDANTS were duly appointed officers and/or employees or agents of the CITY OF LAS VEGAS, subject to oversight and supervision by the CITY OF LAS VEGAS elected and non-elected officials.

17. In doing the acts, failing, and omitting to act as hereinafter described, CORRECTIONAL OFFICER DEFENDANTS and SUPERVISORY DEFENDANTS were acting with the implied and actual permission and consent of Defendant CITY OF LAS VEGAS and its managerial employees.

18. Each CITY OF LAS VEGAS Employee named in this Complaint were the agents of every other CITY OF LAS VEGAS Defendant and had a legal duty to oversee and supervise the hiring, conduct, and employment of every other CITY OF LAS VEGAS Defendant.

19. The true names of Defendants DOES 1 through 20, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs are ignorant of the true identities of Defendants, DOES 1-20, inclusive, and therefore sues them by such fictitious names. The Plaintiffs allege that DOES 1-20 may be liable to Plaintiffs for the acts, omissions, and damages alleged. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities when ascertained.

20. Defendant WELLPATH CARE F/K/A CORRECT CARE SOLUTIONS was tasked by the CITY OF LAS VEGAS to provide both medical and mental health care to inmates housed in the Las Vegas Detention Center.

21. At all times relevant**,** Defendant WELLPATH CARE F/K/A CORRECT CARE SOLUTIONS employed Defendants, SHAWN MAPLETON, MICHAEL POPOV, VIRGILIO PADILLA, FRANCES BODDIE-SMALL, EBONYMICHELLE D GARNER, PSYCH RN DEE, REGINA ELIZONDO, and all Co-Defendants as yet unknown DOES 21-35 (collectively "MEDICAL DEFENDANTS"), were medical assistants, mental health nurses, doctors, psychologists, psychiatrists and other medical staff who were acting under the color of law within the course and scope of their respective duties with the complete authority and ratification of their principal, Defendant CITY OF LAS VEGAS to and task with and otherwise responsible for properly caring for STEPHEN while he was housed at the City of Las Vegas Detention Center.

22. At all relevant times, MEDICAL DEFENDANTS were duly authorized employees and/or agents of the CITY OF LAS VEGAS, who were acting under the color of law within the course and scope of their respective duties as the medical provider(s) for the City of Las Vegas Detention Center and with the complete authority and ratification of their principal, Defendant CITY OF LAS VEGAS.

23. MEDICAL DEFENDANTS were duly appointed officers and/or employees or agents of the CITY OF LAS VEGAS, subject to oversight and supervision by the CITY OF LAS VEGAS' elected and non-elected officials.

24. In doing the acts, failing to do, and omitting to act as hereinafter described, MEDICAL DEFENDANTS were acting with the implied and actual permission and consent of Defendant CITY OF LAS VEGAS and its managerial employees.

25. The true names of Defendants DOES 21 through 35, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs are ignorant of the true identities of Defendants, DOES 21-35, inclusive, and therefore sues them by such fictitious names. The Plaintiffs allege that DOES 21-35 may be liable to Plaintiffs for the acts, omissions, and damages

alleged. Plaintiffs will seek leave to amend this Complaint to show their true names and capacities when ascertained.

## JURISDICTION AND VENUE

26. This civil action is brought for the redress of alleged deprivations of constitutional 28 rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et. seq. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367 and other statutory provisions. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367 to hear and decide claims arising under state laws.

27. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in, and all incidents, events, and occurrences giving rise occurred in, the County of Clark County, Nevada.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

28. On or about January 12, 2019, North Las Vegas Police arrested STEPHEN in Clark County, Nevada, for the Obstructive use of a public sidewalk, a misdemeanor under Clark County Ordinances Sec. 16.11.090.

29. Upon STEPHEN'S arrest, the North Las Vegas Police transported him to the City of Las Vegas Detention Center, where he remained from January 12, 2019, until his death on March 8, 2019.

30. When STEPHEN died, he was a pretrial detainee on the misdemeanor charges of jaywalking and criminal trespass.

31. On January 12, 2019, STEPHEN weighed 174 pounds.

32. At his autopsy, STEPHEN weighed 126 pounds.

33. Prior to his death, doctors had diagnosed STEPHEN with schizophrenia.

34. Every Defendant knew or should have known of STEPHEN'S diagnosis of schizophrenia because on at least two prior occasions, while STEPHEN was incarcerated in the City of Las Vegas Detention Center, the Court ordered STEPHEN released from jail to the custody of Southern Nevada Adult Mental Health for treatment and stabilization at the Rawson Neal Psychiatric hospital because he was unable to eat or engage in self-care.

35. On or about January 12, 2019, Defendants STEPHEN was placed in isolation or administrative segregation instead of a psychiatric unit.

36. On information and belief, STEPHEN was never placed in a medical unit and instead remained in isolation or administrative segregation from on or about January 12, 2019, until his death on March 8, 2019.

37. On or about February 2, 2019, STEPHEN, because of his mental illness, stopped engaging in self-care and stopped eating his food.

38. On or about February 2, 2019, STEPHEN was placed on a food log.

39. On February 9, 2019, Defendant OFFICER DORADO notified Defendant FRANCES BODDIE-SMALL that STEPHEN had not eaten since February 2, 2019.

40. On February 14, 2019, Defendant MICHAEL POPOV examined STEPHEN.

41. Defendant MICHAEL POPOV failed to take STEPHEN'S weight.

42. Defendant MICHAEL POVOPV failed to intervene in any meaningful medical way.

43. Instead, Defendant MICHAEL POPOV scheduled STEPHEN for a follow-up three weeks later.

44. Defendant MICHAEL POPOV chose not to provide any medical care even though STEPHEN had not eaten for at least two weeks and was clearly suffering from a severe mental illness.

45. On February 20, 2019**,** six days after Defendant MICHAEL POPOV evaluated him, STEPHEN weighed 142 pounds, 32 pounds less than what STEPHEN weighed 39 days earlier.

46. On February 20, 2019, a Doctor noted (1) STEPHEN'S weight was in decline, and (2) STEPHEN was noncommunicative, had no appreciation of his charges, the range of punishment, the Court process, or a capacity to communicate with his lawyer.

47. On February 20, 2019, a Doctor not only concluded that STEPHEN met the requirements for a Legal 2000, but the Doctor requested a medical OR. Said Doctor also concluded that STEPHEN'S problems, such as his inability to communicate, engage in self-care, and eat, resulted from his psychological challenges.

48. On February 27, 2019, STEPHEN'S weight was 137 pounds.

49. On March 1, 2019, nearly a week and a half after STEPHEN underwent a mental health exam, which concluded that STEPHEN health was in decline because of his psychological issues, the Doctor who evaluated STEPHEN on February 20, 2019, submitted his orders for a Medical Release also known as a Legal 2000 release.

50. On no less than four occasions after the Doctor determined on February 20, 2019, that STEPHEN'S psychological issues required a Medical Release and prevented STEPHEN from communicating, engaging in self-care, eating, or otherwise appreciating his situation, WELLPATH CARE F/K/A CORRECT CARE SOLUTIONS and MEDICAL DEFENDANTS, rather than intervene medically, simply filled out a medical refusal form and went on with their day.

51. On March 7, 2019, at approximately 5:00 p.m., Defendant Psych Nurse Dee reported Defendant REGINA ELIZONDO that STEPHEN was due to be

released and that he was to be sent to a hospital for continuity of care under a Legal 2000.

52. On March 7, 2019, at approximately 9:15 p.m., Defendant REGINA ELIZONDO spoke to Defendants SGT. C. SMITH and SGT. WEDIG, regarding STEPHEN'S status and pending legal 200 release. At which time Defendant SGT. C. SMITH informed Defendant REGINA ELIZONDO, he knew STEPHEN was on a food log for refusing to eat.

53. On March 8, 2019, at approximately 2:00 a.m., Defendant REGINA ELIZONDO contacted a transport officer (Defendant DOE 1) to inquire as to a release voucher for STEPHEN. Defendant REGINA ELIZONDO did so because he/she had not been contacted to perform a psych eval before STEPHEN'S release as was customary. At which time, Defendant DOE 1 indicated to Defendant REGINA ELIZONDO that no Legal 2000 release was necessary because STEPHEN was not being released to the street but transferred to another jail.

54. On March 8, 2019, at approximately 4:00 a.m., Defendants OFFICER D. CHAPARRO and OFFICER M. WASHINGTON placed a food tray in STEPHEN'S cell.

55. At approximately 4:25 a.m., Defendants OFFICER D. CHAPARRO and OFFICER M. WASHINGTON returned to STEPHEN'S cell to discover that STEPHEN had not eaten. Defendant OFFICER D. CHAPARRO then asked STEPHEN if he was going to eat. However, STEPHEN did not respond. At which time, Defendant OFFICER D. CHAPARRO grabbed STEPHEN'S left arm to elicit a response, but no response was given by STEPHEN. Defendant OFFICER D. CHAPARRO then radioed for Charge Nurse Nichole Thomson to respond. Defendant SGT. M. PARKER was also radioed to respond to the unit. Upon Defendant SGT. M. PARKER'S arrival, both he and Defendant OFFICER D. CHAPARRO entered STEPHEN'S cell but could not elicit a response from STEPHEN.

56. At approximately 4:27 a.m., Charge Nurse Nichole Thomson arrived in the unit to evaluate STEPHEN, but Charge Nurse Nichole Thomson could not obtain any vitals from STEPHEN and therefore requested that additional medical personnel respond to STEPHEN'S unit.

57. At approximately 4:33 a.m., Defendant SGT. M. PARKER requested an ambulance.

58. At approximately 4:35 a.m., additional medical staff, including Defendant REGINA ELIZONDO responding to the unit with additional medical supplies to treat STEPHEN.

59. At approximately 4:36 a.m., STEPHEN was placed on the floor so CPR could be administered. An AED was also attached to STEPHEN'S chest at that time.

60. At approximately 4:38 a.m., medical personnel gave STEPHEN his first AED shock to try and resuscitate STEPHEN.

61. At approximately 4:40 a.m., Defendant SGT. M. PARKER contacted Defendant LIEUTENANT LANDROVE.

62. At approximately 4:43 a.m., Las Vegas Fire Engine 8 arrived and entered the cell where STEPHEN was lying on the floor and placed STEPHEN on a gurney.

63. At approximately 4:47 a.m. AMR, Unit 156, arrived and entered Unit 1, where STEPHEN was housed.

64. At approximately 4:52 a.m., LVFD Engine #8 left the Las Vegas Detention Center with STEPHEN to transport STEPHEN to Sunrise Hospital.

65. At approximately 5:12 a.m., STEPHEN was pronounced dead by Sunrise Hospital Medical Staff.

66. On March 9, 2019, an autopsy was conducted on STEPHEN, which concluded that STEPHEN died from inanition or death from starvation.

67. During STEPHEN'S incarceration from January 12, 2019, until his death on March 8, 2019, the Defendants made STEPHEN sign no less than eight medical refusal forms.

68. On information and belief, none of the Defendants attempted to force-feed STEPHEN at any time during his incarceration from January 12, 2019, until his death on March 8, 2019.

## FIRST CLAIM FOR RELIEF
### SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983)
### VIOLATION OF FOURTEENTH AMENDMENT–
### DEPRIVATION OF DUE PROCESS AND FAMILIAL RELATIONSHIPS
### (SPECIAL ADMINISTRATOR v. ALL DEFENDANTS)

69. Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE repeats and realleges every allegation set forth hereinabove with the same force and effect as if set forth herein.

70. Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in STEPHEN'S relationship with his two minor children, his mother, and other family members.

71. The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

72. The United States Constitution protects all persons from interference with relationships such as those that attend the creation and sustenance of a family and similar highly personal relationships. Specifically, the right to be free from

1  unlawful state interference with the familial relationship enjoyed between parents
2  and children is a protected liberty interest rooted in the due process clause of the
3  Fourteenth Amendment.

4      73. Because of every Defendant and the failure of other Las Vegas
5  Detention Center employees to intervene, STEPHEN died from starvation. The
6  failure to act or intervene and instead to allow STEPHEN to starve to death was
7  unreasonable and shocks the conscience. Further, every Defendant exhibited
8  deliberate indifference to and reckless disregard for STEPHEN and Plaintiffs' rights
9  and displayed a purpose to harm STEPHEN unrelated to any legitimate
10 governmental interest or objective. In doing so, the conduct of the Defendants
11 constitutes a violation of STEPHEN'S Fourteenth Amendment Substantive Due
12 Process right to free from unlawful state interference with his familial relationship
13 with his two minor children, his mother, and other family members.

14     74. Because of the conduct of the Defendants, they are liable for
15 STEPHEN'S injuries because they were either integral participants to the
16 violations of STEPHEN'S rights or they failed to intervene to prevent these
17 violations.

18     75. The conduct of the Defendants was malicious, oppressive, and in
19 reckless disregard for the rights and safety of STEPHEN and warrants the
20 imposition of exemplary and punitive damages as to the individual Defendants.

21     76. Because of STEPHEN'S entirely avoidable death, STEPHEN has
22 suffered the loss of his mother's, his siblings, and his children's' love, care, comfort,
23 society, companionship, assistance, protection, affection, moral support, financial
24 support, and loss of services. Plaintiff MARIAM BLUE, as Special Administrator to
25 STEPHEN'S estate, seek wrongful death damages under this claim.

26     77. Plaintiff MARIAM BLUE, as Special Administrator to STEPHEN'S
27 estate also seek attorneys' fees under 42 U.S.C. § 1988 and costs of suit.
28 / / /

**SECOND CLAIM FOR RELIEF**
**SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983)**
**VIOLATION OF FOURTEENTH AMENDMENT–**
**DEPRIVATION OF DUE PROCESS AND FAMILIAL RELATIONSHIPS**
**(SMB and SFB v. ALL DEFENDANTS)**

78. Plaintiffs, SMB and SFB repeat and reallege every allegation set forth hereinabove with the same force and effect as if set forth herein.

79. Plaintiffs, SMB and SFB, surviving minor children, by and through their legal guardian LISA L. CARROLL individually, each have a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiffs' familial relationship with her their father, STEPHEN.

80. The Substantive Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

81. The United States Constitution protects all persons from interference with relationships such as those that attend the creation and sustenance of a family and similar highly personal relationships. Specifically, the right to be free from unlawful state interference with the familial relationship enjoyed between parents and children is a protected liberty interest rooted in the due process clause of the Fourteenth Amendment.

82. Because of every Defendant and the failure of other Las Vegas Detention Center employees to intervene, STEPHEN died from starvation. The failure to act or intervene and instead to allow STEPHEN to starve to death was unreasonable and shocks the conscience. Further, every Defendant exhibited

deliberate indifference to and reckless disregard for STEPHEN and Plaintiffs' rights and displayed a purpose to harm STEPHEN unrelated to any legitimate governmental interest or objective. In doing so, the conduct of the Defendants constitutes a violation of Plaintiffs SMB'S and SFB'S Fourteenth Amendment Substantive Due Process right to free from unlawful state interference with their familial relationship with their father.

83. The conduct of the Defendants was malicious, oppressive, and in reckless disregard for the rights and safety of STEPHEN and Plaintiffs, SMB, and SFB and warrants the imposition of exemplary and punitive damages as to the individual Defendants.

84. Because of the death of STEPHEN, Plaintiffs, SMB and SFB, surviving minor children, have suffered the loss of STEPHEN'S love, care, comfort, society, companionship, assistance, protection, affection, moral support, financial support, and loss of services of STEPHEN. Plaintiffs seek wrongful death damages under this claim.

85. Plaintiffs, SMB and SFB also seek attorneys' fees under 42 U.S.C. § 1988 and costs of suit.

### THIRD CLAIM FOR RELIEF

### MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM OR POLICY IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE

### (42 U.S.C. § 1983)

### (SPECIAL ADMINISTRATOR V. CITY OF LAS VEGAS and SUPERVISORY DEFENDANTS)

86. Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE, repeats and realleges every allegation set forth hereinabove with the same force and effect as if set forth herein.

87. On and for some time before March 8, 2019 (and continuing to the present date), Defendants CITY OF LAS VEGAS, and SUPERVISORY

DEFENDANTS deprived Plaintiff of the rights and liberties secured by the Fourteenth Amendment to the United States Constitution in that the Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, STEPHEN and of Plaintiffs, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

    a. Allowing Correctional Officers or non-medical personnel to override or otherwise disregard the orders and/or recommendations of medical personnel.

    b. By having and maintaining an unconstitutional policy, custom, and practice of housing inmates who require medical care in isolation or solitary confinement rather than in a medical unit.

    c. By having and maintaining an unconstitutional policy, custom, and practice of disregarding medical orders to transfer an inmate to a hospital for treatment when said inmate will be transferred to another jail rather than released directly to the community.

    d. By having and maintaining an unconstitutional policy, custom, and practice of avoiding taking steps necessary to force-feed inmates who, because of mental illness, stop eating.

    e. By having and maintaining an unconstitutional policy, custom, and practice of not properly observing inmates at risk of or otherwise engaged in self-harm through the act of starvation.

    f. By failing to institute policies regarding constitutional procedures and practices for ensuring that inmates who cease engaging in self-care because of mental illness cannot harm themselves through malnutrition or dehydration.

g.  By inadequate training of its Correctional Officers, Contractors, Agents and other Employees, on the aforementioned issues, including the need to intervene when an inmate is starving his/herself to death.

h.  By failing to train Correctional Officers, Contractors, Agents and other Employees regarding crisis intervention and mental health disorders.

i.  By failing to properly investigate and discipline Correctional Officers, Contractors, Agents and other Employees who fail or otherwise refuse to intervene when they know an inmate is engaging in self-harm.

88. By reason of these policies and practices of the CITY OF LAS VEGAS AND SUPERVISORY DEFENDANTS, STEPHEN, and Plaintiffs, were subjected to pain and suffering, loss of consortium, and loss of life.

89. Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS, with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequence of these policies regarding the constitutional rights of Plaintiffs and other individuals similarly situated.

90. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts of all Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS acted with an intentional, reckless, and callous disregard for the life of STEPHEN and Plaintiffs constitutional rights. Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

91. SUPERVISORY DEFENDANTS who worked at the City of Las Vegas Detention Center, including former Chief MICHELE FREEMAN and Deputy Chief

of Detention Services ROBERT STRAUBE, officials with supervisory and policymaking authority, were aware of and failed to address a pattern and practice of denying needed medical and security (meaningful cell checks, proper classification, medical releases, mental health medical care) to those awaiting trial in their jail. They were aware of this from jail grievances, reports prepared by Correctional Officers, lawsuits against the jail alleging denied medical care, and security lapses. This custom and unconstitutional practice of denying medical care and security needs amounted to cruel and unusual punishment and has been perpetuated for years by City of Las Vegas policymakers and implemented by jail staff without redress. The custom and unconstitutional practice resulted in the deprivation of STEPHEN'S constitutional rights.

92. Defendants' pattern of unconstitutional conduct and policies were so pervasive as to constitute actual or constructive knowledge of the conduct on the part of its policymakers, whose deliberate indifference to the unconstitutional practices is evidenced by a failure to correct the situation once the need for training and supervision became obvious. Their acts and omissions constituted a pattern of constitutional violations and were a proximate cause of STEPHEN'S death. This pattern of unconstitutional policies, and neglect, included but were not limited to the failure to effectively monitor an inmates' mental health medical care or by simple observation an inmate's need for emergency medical care.

93. Defendants' lack of supervision, training, and policymaking was a moving force behind the constitutional violations alleged herein, and STEPHEN'S suffered damages, injuries, and death as a result.

94. The deprivations of STEPHEN'S constitutional rights to needed medical care and safety were a direct and proximate result of the acts, omissions, policies, and customs of Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS. As a direct and proximate result of the constitutional violations alleged herein, STEPHEN suffered great physical and mental pain, anguish, shock,

agony, and ultimately death. Defendants acted with an evil motive or intent or with reckless or callous indifference to STEPHEN'S constitutionally protected rights. Individual capacity Defendants are therefore liable for punitive damages.

95. STEPHEN needed medical care and security, and he did not receive any care or real monitoring, and this was the result of Defendants deliberate indifference to his needs. He died because he was refused proper and needed medical care and security.

96. As a result of cruel and unusual punishment inflicted by the Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS through denial of needed medical and security care, STEPHEN suffered from severe pain and suffering, mental anguish, physical impairment, fear of permanent injury or death, death by starvation, and organ failure.

97. The policies, practices, and customs implemented and maintained and still tolerated by all Defendants were affirmatively linked to and were a significantly influential force behind the torture and death of STEPHEN.

98. By reason of the acts and omissions of all Defendants, Plaintiff MARIAM BLUE, as Special Administrator for STEPHEN'S Estate, has suffered the loss of love, companionship, affection, comfort, care, and society and are entitled to damages.

99. Accordingly, Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS are liable to Plaintiff MARIAM BLUE, as Special Administrator for STEPHEN'S Estate for compensatory damages under 42 U.S.C. § 1983.

100.    Plaintiff MARIAM BLUE, as Special Administrator for STEPHEN'S Estate seeks all permissible wrongful death damages under Nev. Rev. Stat. § 41.085, Nev. Rev. Stat. § 41.100, and the Fourth and Fourteenth Amendments to the U.S. Constitution including, but not limited to, damages for her grief, sorrow, loss of probable support, companionship, society, comfort and

consortium, and damages for pain and suffering of STEPHEN, and penalties, including, but not limited to, exemplary and punitive damages.

101.    Plaintiff MARIAM BLUE, as Special Administrator for STEPHEN'S Estate also seeks attorney's fees and costs under this claim.

<u>**FOURTH CLAIM FOR RELIEF**</u>

**DISABILITY DISCRIMINATION**

**§ 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, et. Seq.**

**(SPECIAL ADMINISTRATOR v. CITY OF LAS VEGAS)**

102.    Plaintiff MARIAM BLUE repeats and realleges every allegation set forth hereinabove with the same force and effect as if set forth herein.

103.    At all relevant times, STEPHEN suffered from and/or was diagnosed with mental and emotional impairments, including but not limited to schizophrenia, making him a protected individual under the Americans with Disabilities Act (ADA).

104.    Upon information and belief, Defendant CITY OF LAS VEGAS, knew or should have known that STEPHEN suffered from a psychiatric disability based on his behavior and his well-documented record from STEPHEN'S previous incarcerations at the Las Vegas Detention Center.

105.    Defendant CITY OF LAS VEGAS had an obligation under the Americans with Disabilities Act and the Rehabilitation Act (ADA) to accommodate STEPHEN'S disability when STEPHEN was in their care.

106.    Upon information and belief Defendant CITY OF LAS VEGAS did not modify its behavior, policies, or customs to account for STEPHEN'S disability, and in doing so, both failed to reasonably accommodate his disability and discriminated against him based on his disability.

107.    Upon information and belief, Defendant CITY OF LAS VEGAS, does not instruct their Correctional Officers, Contractors, Agents and other

Employees to take any steps that may be necessary to prevent an inmate from, because of his or her disability, starving to death to reasonably accommodate disabilities when dealing with individuals with psychiatric disabilities and by failing to do so discriminated against STEPHEN based on his disability.

108. The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) & (2).

109. Title II of the ADA provides: No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity. *Id.* § 12132. Discrimination includes a failure to reasonably accommodate a person's disability. To be a qualified individual with a disability, a person must suffer from a physical or mental impairment that substantially limits that person's ability to perform a major life activity—an activity that the average person in the general population can perform.

110. Title II of the ADA includes an affirmative obligation that public entities must make accommodations for people with disabilities.

111. Title II of the ADA mandates a public entity may be liable for damages under Title II of the ADA if it intentionally or with deliberate indifference fails to provide reasonable accommodation to a disabled person. The failure to provide reasonable accommodation constitutes discrimination against the disabled person. A public entity may not disregard the plight and distress of a disabled person by failing to accommodate his or her needs.

112. Title II of the ADA mandates that once an entity is on notice of the need for accommodation, it is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation.

113.     Title II of the ADA applies to the CITY OF LAS VEGAS because it is a public entity.

114.     Title II of the ADA applies to jails, prisons, and correction facilities.

115.     The Las Vegas Detention Center receives federal funding to provide reasonable accommodation to disabled persons.

116.     Title II of the ADA requires Defendant CITY OF LAS VEGAS to train its Correctional Officers, Contractors, Agents, and other Employees in how to deal with physically and mentally disabled individuals.

117.     Title II of the ADA mandates that government agencies, including police officers, must consider a disabled person's disability by reasonably modifying policies and practices were needed to avoid discrimination. 42 U.S.C. § 12132, 28 C.F.R. Section 35.130(b)(7).

118.     STEPHEN'S form of mental illness is a recognized impairment for purposes of the ADA and NRS 433A.115.

119.     STEPHEN was disabled under the ADA because his mental illness substantially limited his ability to communicate, interact with others, and care for himself.

120.      Despite STEPHEN'S long-term and well-documented mental health impairment, of which Defendant CITY OF LAS VEGAS was aware, Defendant CITY OF LAS VEGAS, in its official capacity, intentionally discriminated against him. Defendant CITY OF LAS VEGAS intentionally discriminated against STEPHEN when it failed to provide him with the physical and mental healthcare and medications he required; failed to refer him for appropriate mental health treatment; failed to monitor his progress after a dramatic change in his weight; and failed to ensure that the jail provided STEPHEN with a housing assignment appropriate for someone suffering from psychotic episodes marked by hallucinations, childlike speech, and paranoia.

121.     Defendant CITY OF LAS VEGAS knew or should have known STEPHEN was experiencing a severe mental health crisis.

122.     Defendant CITY OF LAS VEGAS should have known how to accommodate his mental illness by engaging in strategies or seeking legal remedies such as a Court order to force-feed to prevent an inmate from starving to death because of his or her mental illness or to release STEPHEN to access necessary medical care. Yet despite this knowledge, and the national mandate to accommodate the disabled, Defendant CITY OF LAS VEGAS chose not to accommodate STEPHEN'S impairment and chose instead to watch STEPHEN starve to death.

123.     Defendant CITY OF LAS VEGAS could have reasonably accommodated STEPHEN by taking steps to force-feed STEPHEN or to release him to a hospital to force-feed STEPHEN.

124.     Defendant CITY OF LAS VEGAS had the time, safety, and opportunity to assess the situation and administer a strategy to appropriately accommodate STEPHEN because he did not starve to death overnight but rather over the course of more than a month.

125.     During Defendant CITY OF LAS VEGAS could have achieved an accommodation had it bothered to do so. Even when a mentally disturbed individual is refusing to eat, drink or engage in self-care, accommodations can be made to negate the effects of such behavior at little to no expense or risk to Defendants. STEPHEN was a mentally ill person whose needs required accommodation for his disability.

126.     Defendant CITY OF LAS VEGAS knew or should have known that because of STEPHEN'S impairment, it had to take additional measures to ensure STEPHEN'S health and safety.

127.     By failing to accommodate STEPHEN'S mental health disability, Defendant CITY OF LAS VEGAS acted with discriminatory intent and deliberate indifference to his federally protected rights.

128.    Defendant CITY OF LAS VEGAS could and should have accommodated STEPHEN'S disabilities as follows:

    a.  By the timely release or transfer STEPHEN to a psychiatric hospital.

    b.  By seeking authorization to force-feed STEPHEN.

    c.  By NOT allowing STEPHEN, who was already determined by a medical Doctor to be incompetent, to continue to refuse medical treatment.

    d.  By NOT failing to properly train and supervise employees, both professional and non-professional, including handling situations involving individuals with mental and/or emotional disabilities to prevent their death from starvation in custody.

    e.  By NOT failing to ensure employees with appropriate education and training were available to meet the needs of and protect the rights of STEPHEN.

    f.  By NOT failing to render medical aid and assistance to STEPHEN.

129.    Defendant CITY OF LAS VEGAS thus failed and refused to reasonably accommodate STEPHEN'S mental and physical disabilities while in custody, in violation of the ADA and Rehabilitation Act. That failure and refusal caused his death.

130.    Defendant CITY OF LAS VEGAS violated the ADA and the Rehabilitation Act as they failed and refused to reasonably modify its facilities, services, accommodations, and programs to accommodate STEPHEN'S mental and physical disabilities, including the failure to provide STEPHEN with the medical and mental health treatments, medications, and monitoring necessary to accommodate his mental and physical disabilities. These failures and refusals, which were intentional, proximately caused his death.

131.    The conduct alleged was done, and the failure to accommodate was in reckless disregard of STEPHEN'S constitutionally protected rights,

1  justifying an award of punitive damages as against Defendant CITY OF LAS
2  VEGAS.

3       132.    By reason of the aforementioned acts and omissions, Plaintiffs
4  were caused to incur funeral expenses.

5       133.    By reason of the aforementioned acts and omissions of
6  Defendants and each of them, Plaintiffs have suffered the loss of love,
7  companionship, affection, comfort, care, and society.

8       134.    Accordingly, Defendant CITY OF LAS VEGAS is liable to
9  Plaintiffs for compensatory damages in an amount according to proof at trial.

10      135.    Plaintiffs seek wrongful death and survival damages under this
11 claim.

12      136.    Plaintiffs also seek statutory attorney fees under this claim.

13      137.    As a direct and proximate result of Defendant CITY OF LAS
14 VEGAS' conduct as alleged above, Plaintiffs suffered extreme and severe mental,
15 emotional anguish, distress, and pain and have been injured in mind and body.

16      138.    Plaintiffs have been deprived of the life-long love,
17 companionship, comfort, support, society, care, and sustenance of STEPHEN and
18 will continue to be so deprived for the remainder of their natural lives.

19      139.    Plaintiffs are therefore entitled to damages for their mental
20 and/or emotional distress because of the conduct of Defendant CITY OF LAS
21 VEGAS and the emotional distress negligently inflicted by Defendant CITY OF LAS
22 VEGAS.

23      140.    Plaintiffs also seek attorney's fees and costs.

24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**FIFTH CLAIM FOR RELIEF**

**MUNICIPAL LIABILITY–FAILURE TO TRAIN (42 U.S.C. § 1983)**

**(SPECIAL ADMINISTRATOR v. CITY OF LAS VEGAS and SUPERVISORY DEFENDANTS)**

141.    Plaintiff MARIAM BLUE repeats and realleges every allegation set forth hereinabove with the same force and effect as if set forth herein.

142.    The training policies of the Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS were not adequate to train the CORRECTIONAL OFFICER DEFENDANTS, MEDICAL DEFENDANTS let alone any of Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS other Correctional Officers, Contractors, Agents, and other Employees regarding dealing with individuals who because of mental illness cannot care for themselves. As a result, Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS Correctional Officers, Contractors, Agents and other Employees cannot handle the usual and recurring situations with which they must deal, such as confronting individuals with mental and emotional disabilities, who cannot comprehend or appreciate the need for self-care let alone engaged in the necessary self-care. These inadequate training policies existed before the date of this incident and continue to this day, including, but not limited to:

143.    Failure to train Correctional Officers, Contractors, Agents, and other Employees on how to approach or handle individuals who have mental and/or emotional disabilities to prevent their death by self-inflicted starvation.

144.    Failure to train or require that others train Correctional Officers, Contractors, Agents, and other Employees on how to approach or handle individuals who have mental and/or emotional disabilities to prevent their death by self-inflicted starvation.

145.    Failure to train Correctional Officers, Contractors, Agents, and other Employees to recognize whether an inmate cannot properly care for oneself, which STEPHEN was not.

146.    Failure to train Correctional Officers, Contractors, Agents, and other Employees about what constitutes self-harm.

147.    Failure to train Correctional Officers, Contractors, Agents, and other Employees on the steps necessary to have an inmate legally force-fed.

148.    Failure to train or require that others train Correctional Officers, Contractors, Agents, and other Employees on the steps necessary to have an inmate legally force-fed.

149.    Failure to train Correctional Officers, Contractors, Agents, and other Employees to fulfill their duties while complying with, rather than disregarding or overruling medical orders/recommendations of medical personnel.

150.    Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS were deliberately indifferent to the known or obvious consequences of its failure to train and/or supervise its Correctional Officers, Contractors, Agents, and other Employees, adequately regarding an inmate's refusal to eat due to mental illness. This inadequate training includes failing to teach Correctional Officers, Contractors, Agents, and other Employees how to recognize an inmate's inability or failure to engage in self-care, how to ensure an inmate may not starve himself to death because of his or her mental illness/disabilities, and to prevent their death in custody of Correctional Officers by using methods design to keep such inmates alive, such as force-feeding.

151.    On information and belief, Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS provide no training to its Correctional Officers, Contractors, Agents, and other Employees on recognizing the need to force-feed or otherwise intervene to protect the health and safety of inmates who, as a result of his or her mental illness/disabilities, cannot properly care for

his/herself. The training that is and was provided to Correctional Officers, Contractors, Agents, and other Employees, such as to maintain a food log is constitutionally inadequate because it fails to consider, consider, or otherwise obtain the necessary treatment for an inmate's serious medical needs.

152.    The failure of Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS, to provide adequate training regarding ensuring that an inmate with mental illness does not die of starvation or dehydration and otherwise receives adequate and necessary medical care caused the deprivation of STEPHEN'S constitutional rights. Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS failure to train is so closely related to the deprivation of STEPHEN'S rights as to be the moving force that caused the ultimate injury.

153.    By failing to provide or require adequate training to its Correctional Officers, Contractors, Agents, and other Employees, Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS acted with an intentional, reckless, and callous disregard for the life of STEPHEN, his constitutional rights and that of the Plaintiff. All Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive, and unconscionable to any person of normal sensibilities.

154.    By reason of the aforementioned acts and omissions of Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS, Plaintiffs suffered the loss of love, companionship, affection, comfort, care, society, and future support of STEPHEN.

155.    Defendants CITY OF LAS VEGAS, and SUPERVISORY DEFENDANTS each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

156.    Plaintiffs seek all permissible wrongful death damages under Nev. Rev. Stat. § 41.085, including, but not limited to, damages for her grief,

1 sorrow, loss of probable support, companionship, society, comfort and consortium,
2 and damages for pain, suffering of STEPHEN, any penalties, including, but not
3 limited to, exemplary and punitive damages against individual Defendants.

4     157. Plaintiff MARIAM BLUE as Special Administrator of
5 STEPHEN'S estate, seek all permissible damages under Nev. Rev. Stat. § 41.100
6 and the Fourth and Fourteenth Amendments to the U.S. Constitution.

7     158. Plaintiffs also seek statutory attorneys' fees and costs under this
8 claim.

9

**FIFTH CLAIM FOR RELIEF**

**MUNICIPAL LIABILITY—RATIFICATION (42 U.S.C. § 1983)**

**(PLAINTIFFS v. CITY OF LAS VEGAS and SUPERVISORY DEFENDANTS)**

    159. Plaintiffs repeat and reallege every allegation as set forth
hereinabove with the same force and effect as if set forth herein.

    160. At all times relevant all named Defendants acted under color of
law when they were deliberately indifferent to STEPHEN'S serious medical need.
And said deliberate indifference directly led to and/or caused STEPHEN'S death.

    161. The acts and/or failure to act of Defendants CITY OF LAS
VEGAS, and SUPERVISORY DEFENDANTS deprived Plaintiffs of their particular
rights under the United States Constitution and each Defendant acted under color
of state law.

    162. Defendants CITY OF LAS VEGAS, and SUPERVISORY
DEFENDANTS acted or purported to act in the performance of official duties under
state, county, or municipal law, ordinance or regulation.

    163. DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY
DEFENDANTS had final policymaking authority from Defendant CITY OF LAS
VEGAS concerning the acts and/or failure to act of all Correctional Officers,
Contractors, Agents and other Employees and all other named Defendants.

164.    DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS ratified the actions and failure to act of all Correctional Officers, Contractors, Agents, and other Employees, and all other named Defendants, as it relates to the deliberate indifference shown towards STEPHEN'S serious medical needs.

165.    DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS, knew of and specifically made a deliberate choice to approve of all the named Defendants acts and the basis for it.

166.    Upon information and belief, DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS knew that STEPHEN was engaged in self-harm and at risk of causing himself serious harm and/or death because of his mental illness.

167.    DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS ratification of the acts and/or omissions of all other named Defendants, include, but are not limited to:

168.    DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS failed to conduct a prompt and thorough investigation of the events involving STEPHEN'S death and the conduct of the CORRECTIONAL OFFICER DEFENDANTS, and the MEDICAL DEFENDANTS actions.

169.    On information and belief none of the Defendants were disciplined, fired, or otherwise subject to any corrective action or required to undergo any further training as it relates to the events at issues in this complaint.

170.    DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS, upon information and belief, did not do anything or take any action regarding STEPHEN'S death, resulting in de facto ratification.

171.    DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS allows the deliberate indifference to the serious medical needs of individuals with disabilities, such as STEPHEN.

172.     Failure to follow proper protocol in dealing with individuals with mental and/or emotional disabilities.

173.     Upon information and belief, DEFENDANTS CITY OF LAS VEGAS, AND SUPERVISORY DEFENDANTS approved of all the Defendant's actions.

174.     Plaintiffs seek all permissible wrongful death damages under Nev. Rev. Stat. § 41.085, including, but not limited to, damages for grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain and suffering of STEPHEN, any penalties, including, but not limited to, exemplary and punitive damages.

175.     Plaintiff, MARIAM BLUE, as Special Administrator of STEPHEN'S estate, seek all permissible damages under Nev. Rev. Stat. § 41.100 and the Fourth and Fourteenth Amendments to the U.S. Constitution.

176.     Plaintiffs also seek statutory attorney fees and costs under this claim.

### SIXTH CLAIM FOR RELIEF
### NEGLIGENCE–WRONGFUL DEATH (Nevada State-Law Claim)
### (ALL PLAINTIFFS v. ALL DEFENDANTS)

177.     Plaintiffs repeat and reallege every allegation as set forth hereinabove with the same force and effect as if set forth herein.

178.     The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

179.     Failing to timely release or transfer STEPHEN to a psychiatric hospital.

180.     Failing to seek authorization to force-feed STEPHEN.

181.     By allowing an individual who was already determined by a medical Doctor to not be competent to continue to refuse medical.

182.     Failing to properly train and supervise employees, both professional and non-professional, including handling situations involving individuals with mental and/or emotional disabilities to prevent their death from starvation in custody.

183.     Failing to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of STEPHEN.

184.     Failing to render medical aid and assistance to STEPHEN.

185.     As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, STEPHEN was caused to suffer severe pain and suffering and ultimately died.

186.     As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and has been injured in mind and body.

187.     Plaintiffs, SMB and SFB have been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of STEPHEN and will continue to be so deprived for the remainder of their natural lives.

188.     Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE suffered extreme and severe mental anguish and pain and has been injured in mind and body.

189.     Defendant CITY OF LAS VEGAS is vicariously liable for the wrongful acts of all other named Defendants whether known or not known at this time, because all other Defendants acted under color of law and within the course and scope of their employment for the CITY OF LAS VEGAS.

190.     Upon information and belief, the negligent acts of the named Defendants, which resulted in bodily harm, including death to STEPHEN were vicariously condoned by Defendant CITY OF LAS VEGAS.

191.    Plaintiffs, SMB and SFB seek all permissible damages under Nev. Rev. Stat. § 41.085, including, but not limited to, damages for her grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of STEPHEN, any penalties, including, but not limited to, exemplary and punitive damages.

192.    As Special Administrator of STEPHEN'S estate, Plaintiff MARIAM BLUE seeks all permissible damages under Nev. Rev. Stat. § 41.100.

193.    Plaintiffs also seek statutory attorneys' fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF
### NEGLECT OF A VULNERABLE PERSON
### (Nevada State-Law Claim)
### (SPECIAL ADMINISTRATOR v. ALL DEFENDANTS)

194.    Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE repeats and realleges every allegation set forth hereinabove with the same force and effect as if set forth herein.

195.    At all times relevant, STEPHEN had a mental impairment, schizophrenia, that substantially limited one or more of his major life activities of the person.

196.    At all times relevant, STEPHEN had a medical or psychological record of the impairment or was otherwise regarded as having the impairment.

197.    At all times relevant, the Defendants knew that STEPHEN was a vulnerable person within the meaning of NRS 41.1395(4)(e).

198.    The Defendants had a legal duty to properly care for STEPHEN and to ensure that STEPHEN received the proper and necessary medical care to maintain STEPHEN'S physical and mental health.

199.     The Defendants breached their duty by failing to properly care for STEPHEN. The Defendants' breach of that duty constitutes Neglect under Nev. Rev. Stat. § 41.1395 (4)(c).

200.     The Defendants' breach was the direct and proximate cause of STEPHEN'S death.

201.     Plaintiff, MARIAM BLUE, as Special Administrator of STEPHEN'S estate, seeks all permissible damages under Nev. Rev. Stat. §41.1395, Nev. Rev. Stat. § 41.085 and Nev. Rev. Stat. § 41.100.

202.     Plaintiff, MARIAM BLUE, also seek statutory attorney fees and costs under this claim.

## EIGHTH CLAIM FOR RELIEF
### MEDICAL MALPRACTICE (Nevada State-Law Claim)
### (SPECIAL ADMINISTRATOR v. MEDICAL DEFENDANTS)

203.     Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE repeats and realleges every allegation in paragraphs hereinabove with the same force and effect as if set forth herein.

204.     The MEDICAL DEFENDANTS owed STEPHEN a duty to exercise due care.

205.     The MEDICAL DEFENDANTS had a heightened duty to use such skill, prudence, and diligence as other members of the medical profession commonly possess and exercise.

206.     The MEDICAL DEFENDANTS breached their duty of care to STEPHEN when they failed to render medically appropriate care to STEPHEN.

207.     That breach, as attested to by Dr. Danial O. Laird, M.D.'s declaration attached as Exhibit C was the direct and proximate cause of STEPHEN'S death.

208.    The harm sustained by STEPHEN because of the MEDICAL DEFENDANT'S breach of their duty of care occurred less than three years ago.

209.    The harm sustained by STEPHEN because of the MEDICAL DEFENDANTS breach of their duty of care was only discovered in May 2020, less than one year ago.

210.    Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE seeks all permissible wrongful death damages under Nev. Rev. Stat. § 41.085 and Nev. Rev. Stat. § 41.100.

211.    Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE also seek statutory attorney fees and costs under this claim.

## NINTH CLAIM OF RELIEF

### DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED IN VIOLATION OF THE FOURTEENTH AMENDMENT (42 USC 1983) (SPECIAL ADMINISTRATOR v. ALL DEFENDANTS)

212.    Plaintiff MARIAM BLUE, as the Special Administrator of STEPHEN'S ESTATE incorporate their allegations in previous paragraphs as if stated herein.

213.    The Due Process Clause imposes a duty on state actors to protect or care for citizens when the state has limited an individual's ability to care for himself.

214.    The Due Process Clause imposes a duty on state actors to protect or care for citizens when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.

215.    Defendants knew or should have known, STEPHEN required medical care.

216.    As STEPHEN was incarcerated, Defendants limited his ability to care for himself and thereby assumed a duty to provide medical care for him.

217.    Defendants exacerbated STEPHEN'S need for medical care by secluding him in a cell for days, and thereby Defendants assumed a duty to provide medical care for him.

218.    Defendants violated STEPHEN'S clearly established rights when they failed to provide medical care to him.

219.    The actions of Defendants proximately caused STEPHEN'S pain and suffering, emotional distress, starvation, and death.

220.    Defendants acted willfully, knowingly, and purposefully and/or with deliberate indifference to deprive STEPHEN of his constitutional rights. As a result of the nature of Defendants' conduct, Plaintiffs are entitled to recover punitive damages against the individual Defendants.

221.    Defendants' acts and/or omissions were a proximate cause of the following injuries and damages suffered by the heirs and Estate of STEPHEN BURRELL:

       a)  Actual damages;

       b)  Pain and suffering and mental anguish suffered by STEPHEN prior to his death;

       c)  Funeral and burial expenses;

       d)  Exemplary damages;

       e)  Pre-judgment interest;

       f)  Post-judgment interest;

       g)  Attorney's fees, costs, and litigation expenses under 42 U.S.C. § 1988 and 42 U.S.C. § 12205 or as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MARIAM BLUE as Special Administrator of STEPHEN'S estate, and Plaintiff, LISA L. CARROLL on behalf of her wards SMB, and SFB, individually, requests entry of judgment in their favor and against all named Defendants inclusive, as follows:

a) For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in an amount to be proven at trial.

b) For hedonic damages.

c) For funeral and burial expenses.

d) For medical billing and expenses.

e) For punitive damages against individual Defendants in an amount to be proven at trial.

f) For interest.

g) For reasonable costs of this action, Court costs, and attorneys' fees; and

h) For such other and further relief as the Court may deem just, proper, and appropriate.

Dated this 4th day of March 2021.

**THE GRACE LAW FIRM**
*By: /s/ Julie Raye, Esq.*
**JULIE RAYE, ESQ.**
Nevada Bar No. 10967
8530 W. Charleston Blvd., Ste. 100
Las Vegas, Nevada 89117
*Attorney for Plaintiff*

MARIAM BLUE, individually, and as Special Administrator of the Estate of STEPHEN BURRELL; LISA L. CARROLL on behalf of her wards SMB, and SFB, individually

1

**<u>DEMAND FOR JURY TRIAL</u>**

2      Plaintiffs hereby demands a Jury Trial.

3

4      Dated this 4th day of March 2021.

5

6                                         **THE GRACE LAW FIRM**

7                                         <u>*By: /s/ Julie Raye, Esq.*</u>

8                                         **JULIE RAYE, ESQ.**
                                          Nevada Bar No. 10967

9                                         8530 W. Charleston Blvd., Ste. 100

10                                        Las Vegas, Nevada 89117
                                          *Attorney for Plaintiff*

11

12                                        MARIAM BLUE, individually, and as special
                                          administrator of the Estate of STEPHEN

13                                        BURRELL; LISA L. CARROLL on behalf of

14                                        her wards SMB, and SFB, individually

15

16

17

18

19

20

21

22

23

24

25

26

27

28