UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Marian[1] Blue, individually and as special administrator of the Estate of Stephen Burrell; Lisa L. Carroll, on behalf of her wards, SMB and SFB, individually,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Las Vegas, et al.,<br><br>Defendants. | Case No. 2:21-cv-00372-RFB-DJA<br><br>**Order** |

This is a civil rights action arising out of Stephen Burrell's death by starvation while he was a pretrial detainee at the Las Vegas Detention Center. Plaintiffs sue Defendants[2] for damages, alleging in part that Defendants should have known that Burrell—due to his schizophrenia, bipolar disorder, major-depressive disorder, polysubstance-dependence disorder, and other mental health and medical impairments—was unable to eat or engage in life-sustaining self-care. Plaintiffs move to compel the Wellpath Defendants[3] to supplement their responses to

---

[1] Plaintiffs have filed an errata, explaining that Plaintiff Marian Blue's first name was misspelled as "Miriam Blue." (ECF No. 121).

[2] Defendants include the City of Las Vegas; Wellpath, LLC f/k/a Correct Care Solutions, LLC; Lieutenant Danielle Davis; Lieutenant Matthew Triplett; Officer Richard Dorado; Officer D'Angelo Chaparro-Wilson; Officer Maurice Washington; Sergeant Marcos Parker; Sergeant Charles Smith; Sergeant John Wedig; Sergeant J. Schroyer; Sergeant L. Holmes; Officer A. Eliason; Officer Travis Raz; Officer Damon Millett; Sergeant Bledsoe; Shawn Mapleton; Michael Popov; Virgilio Padilla, Francis Boddie-Small; EbonyMichelle D. Garner; Dee Morgan aka Vicky Morgan; Regina Elizondo; Doctor Benet; Doctor Still; James Tenney; Nicole Ashley Thompson; Michelle Fernandez; Lovela A. Pongan; Ashley Nicole Phillips.

[3] The Wellpath Defendants include Wellpath Care, f/k/a Correct Care Solutions, LLC; Ebony-Michelle Garner; Shawn Mapleton, M.D.; Regina Elizondo; Francis Boddie-Small; Virgilio Padilla; Vicky Morgan; James Tenney, M.D.; Michelle Fernandez; Ashley Nicole Phillips; Nicole

requests for production, arguing that the Wellpath Defendants frequently relied on boilerplate objections, improper privileges, and did not explain whether they were withholding responsive documents. (ECF No. 112). Plaintiffs move for attorneys' fees incurred in bringing the motion to compel. (ECF No. 114). Because the Court finds that certain of the Wellpath Defendants' objections and responses are insufficient, but that certain requests are too broad, it grants in part and denies in part Plaintiffs' motion to compel. Because the Court finds that reasonable minds could disagree over the sufficiency of the Wellpath Defendants' objections and responses, the Court denies Plaintiffs' motion for attorneys' fees. The Court finds these matters properly resolved without a hearing. LR 78-1.

I.      **Standard.**

If a party resists discovery, the requesting party may file a motion to compel. *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)-(iv) ("A party seeking discovery may move for an order compelling an answer, [or] production ... if ... (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents ... as requested under Rule 34."). The motion must include a threshold showing that the requested information falls within the scope of discovery under Rule 26. *See Sanhueza v. Lincoln Technical Institute, Inc.*, No. 2:13-cv-2251-JAD-VCF, 2014 WL 6485797, at *2 (D. Nev. Nov. 18, 2014) (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992)). To be discoverable under Federal Rule of Civil Procedure 26(b)(1), information must be: (1) relevant to any party's claim or defense; and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). The party opposing discovery has the burden of showing that the discovery is, among other things, irrelevant, overly broad, or unduly burdensome. *See Fosbre v. Las Vegas Sands Corp.*, No. 2:10-cv-00765-APG-GWF, 2016 WL 54202, at *4 (D. Nev. Jan. 5, 2016) (citing *Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-54 (S.D. Ind. 2000)). To meet this burden, the objecting party must specifically detail the reasons why each request is objectionable. *See Fosbre*, 2016 WL 54202, at *4.

---

A. Thomson; and Lovella A. Pongan. Certain defendants' names are spelled slightly differently or referred to slightly differently in the caption than in the parties' briefs.

Federal Rule of Civil Procedure 26(b)(2)(C) further limits discovery and allows the Court to restrict discovery where it is "outside the scope of Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(3). In deciding whether to restrict discovery under Federal Rule of Civil Procedure 26(b)(2)(C), the Court "should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Caballero v. Bodega Latina Corp.*, No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *3 (D. Nev. July 25, 2017) (internal citations and quotations omitted). Fed. R. Civ. P. 26 gives the Court broad discretion to "tailor discovery narrowly and to dictate the sequence of discovery." *See id.* (internal citations and quotations omitted).

**II.  Discussion.**

    ***A.  The Court grants in part and denies in part Plaintiffs' motion to compel.***

> **Request for Production (RFP) No. 2:**
> Produce all DOCUMENTS and materials, including statements and communications that REFER TO, RELATE TO or were generated in relation to any investigation, audit, inquiry, or view into the conditions of the SUBJECT CONFINEMENT and PRIOR CONFINEMENTS, the death of STEPHEN BURRELL, and/or the facts and circumstances leading up to and surrounding his death.

(ECF No. 112 at 9).

The Wellpath Defendants initially objected on attorney client privilege and work product doctrine grounds, citing to their initial disclosures. (*Id.* at 9-10). They then supplemented their response to object that the request for information regarding Burrell's prior confinements was irrelevant. (*Id.*). They also provided a privilege log identifying the responsive information they believed to be privileged. (*Id.*).

Plaintiffs argue that the Wellpath Defendants' initial privilege objection was improper because it did not specify which documents were withheld until the Wellpath Defendants later provided a privilege log. (ECF No. 112 at 10). Plaintiffs add that the Wellpath Defendants' relevance objection regarding prior confinements is improper because Plaintiffs' claims are based, in part, on whether the Wellpath Defendants knew Burrell was unable to eat or take care of

himself because of his prior confinements. (*Id.* at 10-11). Regarding the Wellpath Defendants' use of the "peer review" privilege, Plaintiffs argue that it is a state law privilege inapplicable to the case because it is in federal court and a detainee death case. (*Id.*).

The Wellpath Defendants respond that they made their initial privilege objection because the request was broad enough to encompass the legal file. (ECF No. 116 at 5). They later supplemented their response after Plaintiffs clarified that they were seeking a "morbidity and mortality review," over which the Wellpath Defendants assert the "peer review" privilege. (*Id.*). The Wellpath Defendants argue that the privilege applies because the documents are only relevant to Plaintiffs' state law claims. (*Id.* at 7). Plaintiffs reply that the Wellpath Defendants construe the relevance of the "morbidity and mortality review" documents too narrowly and that the documents are relevant to Plaintiffs' entire case, not just their state law claims. (ECF No. 120 at 6-7).

The medical peer review privilege broadly describes statutory privileges protecting proceedings of committees investigating and evaluating the quality of care in a medical facility, particularly after "sentinel events" involving death, infection, or injury.[4] *See Guzman-Ibarguen v. Sunrise Hosp. and Medical Center*, No. 2:10-cv-01228-PMP-GWF, 2011 WL 2149542, at *3

---

[4] Relevant to the analysis here are Nevada Revised Statutes 49.117, 49.119, 49.265, 439.875, 439.800-890, which the Wellpath Defendants cite as the basis for their privilege assertion. The court in *Guzman-Ibarguen* addressed these provisions and the ways in which they protect "peer review" documents. "NRS 49.117 and NRS 49.119 apply to the proceedings of a 'review committee' which includes an organized committee of a hospital responsible for evaluating and improving the quality of care rendered by the parent organization or 'a peer review committee of a medical…society.'" *Guzman-Ibarguen*, 2011 WL 2149542, at *3-4. Under NRS 49.119, "a review committee has a privilege to refuse to disclose and to prevent any other person from disclosing its proceedings and records and testimony given before it." *Id.* "NRS 49.265 more specifically grants a privilege in regard to the proceedings of organized committees of hospitals and other organizations that provide emergency medical care which have responsibility for evaluating and improving the equality of care." *Id.* "NRS 439.800 et seq. imposes certain reporting and investigation duties on hospitals and other 'medical facilities' concerning 'sentinel events.'" *Id.* NRS 439.830 defines a sentinel event to include "[a]ny death that occurs in a health facility." NRS 439.875 "also requires the medical facility to establish a patient safety committee…" *Id.* at *5. Under NRS 439.875(5), "[t]he proceedings and records of a patient safety committee are subject to the same privilege and protection from discovery as the proceedings and records described in NRS. 49.265." *Id.* at *6.

(D. Nev. June 1, 2011).  In *Agster v. Maricopa County*, the Ninth Circuit declined to create a peer review privilege that would apply in federal cases.  *See Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005).  It considered two things in making this decision.  *See id.*  First, that Congress twice had the opportunity to consider the privilege and had not addressed it.  *See id.*  And second, that in the case at hand, Maricopa County sought to use the privilege to protect a report bearing on the death of a prisoner.  *See id.*  The court explained,

> Whereas in the ordinary hospital it may be that the first object of all involved in patient care is the welfare of the patient, in the prison context the safety and efficiency of the prison may operate as goals affecting the care offered.  In these circumstances, it is peculiarly important that the public have access to the assessment by peers of the care provided.

*Id.*

*Guzman-Ibarguen v. Sunrise Hospital and Medical Center* stands for the proposition that, despite the Ninth Circuit's decision in *Agster*, where documents are relevant *only* to state law claims or defenses, the peer review privilege applies to protect those documents in federal cases. *See Guzman-Ibarguen v. Sunrise Hosp. and Medical Center*, No. 2:10-cv-1228-PMP-GWF, 2011 WL 2149542, at *13 (D. Nev. June 1, 2011).  There, a patient's family sued Sunrise Hospital after the patient committed suicide while in the hospital's care.  *See id.* at *1-2.  The plaintiffs sued under the federal Emergency Medical Treatment and Active Labor Act (EMTALA) and for medical malpractice, a Nevada state law claim.  *See id.*  Congress enacted EMTALA to

> respond to the specific problem of hospital emergency rooms refusing to treat patients who were uninsured or who could otherwise not pay for treatment.  In such situations, emergency rooms would either decline to provide treatment or transfer patients in an unstable condition to other hospitals, thereby jeopardizing patient's health.

*Baker v. Adventist Health, Inc.*, 260 F.3d 987, 993 (9th Cir. 2001).

EMTALA requires hospitals to first screen patients for an emergency medical condition, and, if one is present, stabilize the patient before transferring him to a different facility or discharging him.  *Guzman-Ibarguen*, 2011 WL 2149542, at * 9.  EMTALA, however, does not penalize faulty screening, only screening applied disparately.  *See id.* at *10.  Thus, while faulty

screening may constitute negligence or malpractice, unless the hospital screened similarly situated patients differently, faulty screening does not constitute an EMTALA claim. *See id.*

When the plaintiffs in *Guzman-Ibarguen* sought documents regarding the hospital's internal review, the hospital asserted Nevada's statutory peer review privileges. *See id.* at *2-4. The court noted that, if the documents demonstrated that the hospital applied its screening disparately to the decedent patient, then the documents would be relevant to the decedent's EMTALA claim and not protected by the state-law peer review privilege. *See id.* at *13-14. On the other hand, if the documents did not reveal disparate treatment, they would be relevant *only* to the plaintiff's medical malpractice claim and thus, protected by the state-law peer review privilege. *See id.* The court thus ordered the hospital to provide the documents *in-camera*. *See id.*

Here, because the documents would be relevant to Plaintiffs' state and federal claims regardless of their contents, the peer review privilege does not apply. This case is like *Agster* and distinguishable from *Guzman-Ibarguen* because it deals with a detainee's death, not a death in a hospital, and includes more than just EMTALA and medical malpractice claims. Because this is a case involving death of a detainee, the Court must consider the unique importance of the public having access to the assessment by peers of the care provided by the Wellpath Defendants. And because this case involves a detainee's death, it is factually distinguishable from *Guzman-Ibarguen*, which involved a patient's death while at a hospital. But the Wellpath Defendants do not explain why the Court should apply the privilege despite this distinguishing factor.

Not only did *Guzman-Ibarguen* case deal with a patient death at a hospital, but it also dealt with EMTALA and medical malpractice claims only. That only these two claims were at issue created a dichotomy in *Guzman-Ibarguen* that does not exist here. In *Guzman-Ibarguen*, the peer review documents would be relevant to the federal EMTALA claims only if they demonstrated that the hospital treated the decedent differently than other similarly situated plaintiffs. If the documents did not demonstrate disparate treatment, the records would be relevant only to the state law medical malpractice claim.

But here, Plaintiff has raised state and federal claims which have adjacent or overlapping elements. (ECF No. 56). Because of the similarity of these claims, regardless of the contents of the documents the Wellpath Defendants are withholding, they are relevant to *both* state law and federal law claims. Not one or the other like in *Guzman-Ibarguen*.

For example, Plaintiffs' deliberate indifference claim, brought under 42 U.S.C. § 1983, requires Plaintiffs to show that the Wellpath Defendants' failure to treat Burrell's condition could have resulted in further significant injury or the unnecessary and wanton infliction of pain and that the failure to treat was deliberately indifferent. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Similarly, under Nevada's statute providing an action for neglect and abuse of a vulnerable person, "abuse" is defined as the "willful and unjustified…[i]nfliction of pain, injury, or mental anguish." Nev. Rev. Stat. 41.1395(4)(a). Given the similarities between the state and federal causes of action, the documents the Wellpath Defendants seek to protect will either be relevant to proving *both* the federal and state claim because they show unjustified infliction of pain or *neither* the federal nor the state claim because they do not.

The Court thus finds that the peer review privilege is inapplicable to the documents the Wellpath Defendants seek to withhold in responding to this RFP . Additionally, the Court disagrees with the Wellpath Defendants' argument that Burrell's prior confinements are irrelevant. Plaintiffs allege that the Wellpath Defendants were aware of Burrell's inability to feed or care for himself because Burrell was previously detained, making his prior detentions relevant. The Court thus grants Plaintiffs' motion to compel a further response to this RFP. The Wellpath Defendants must respond to this request with the information they have marked privileged under Nevada's peer review privilege. They must also respond to this RFP with responsive information related to Burrell's prior confinements.

> **RFP No. 4:**
> Produce every contract, subcontract or agreement pursuant to which any PERSON, firm or entity (including WELLPATH) agreed to provide medical and/or mental health care services to inmates or

detainees at the CITY JAIL at any time leading up to and including March of 2019.

**RFP No. 41:**
Produce all contract bids or proposals, including supporting DOCUMENTS and formal and informal communications, that led to WELLPATH PROVIDING medical or mental health services at the CITY JAIL.

(ECF No. 112 at 11-12).

The Wellpath Defendants objected to RFPs 4 and 41 for being overbroad. (*Id.*). The Wellpath Defendants also objected on relevance grounds to RFP 41. (*Id.*). They later supplemented both responses with a list of documents. (*Id.*).

Plaintiffs' arguments regarding these RFPs focus on the Wellpath Defendants' initial objections that the requests are "overbroad," stating that it was improper for the Wellpath Defendants to object on that ground without attempting to explain how the request was overbroad. (ECF No. 112 at 12-13) (ECF No. 120 at 8). But regardless of the propriety of their initial objection, the Wellpath Defendants have since amended their response and aver that they have provided all the documents in their possession responsive to this request. (ECF No. 116 at 9-11). Plaintiffs have provided no reason for the Court to conclude that the Wellpath Defendants are withholding responsive documents and, without more, the Court will not compel a further response to these RFPs.

**RFP No. 5:**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect any request for INFORMATION from any PERSON, firm, or entity RELATED TO the SUBJECT CONFINEMENT, PRIOR CONFINEMENTS, the death of STEPHEN BURRELL, and/or the facts and circumstances leading up to and surrounding his death.

**RFP No. 6:**
Produce all DOCUMENTS and materials PROVIDED to any PERSON, firm, or entity in response to any request for INFORMATION RELATED to the SUBJECT CONFINEMENT, PRIOR CONFINEMENTS, the death of STEPHEN BURREL, and/or the facts and circumstances leading up to and surrounding his death.

(ECF No. 112 at 13-14).

The Wellpath Defendants objected to RFPs 5 and 6 for being burdensome and requesting attorney client privileged and work product protected documents. (*Id.*). The Wellpath Defendants also cited to their initial disclosures. (*Id.*). They later supplemented to explain that no materials were being withheld but "the legal file" and that they had no responsive requests "from the Department of Justice or any other investigatory agency." (*Id.*).

Plaintiffs argue that the Wellpath Defendants' responses contain improper boilerplate objections and assert privileges without a privilege log. (*Id.*). The Wellpath Defendants respond that they supplemented their responses after Plaintiffs clarified in their letter and meet and confers that they were seeking information from the Department of Justice through these requests. (ECF No. 116 at 11-13). The Wellpath Defendants "confirmed that no responsive documents were in Wellpath, LLC's custody or control..." (*Id.*). Plaintiffs reply that they did not limit the request to the Department of Justice and that the Wellpath Defendants fail to explain why they asserted a privilege with no privilege log. (ECF No. 120 at 8-9).

The Court is not equipped to decide which side is right about whether the parties narrowed these RFPs during the meet and confer. However, the Wellpath Defendants have not explained why the RFPs, as written, are overbroad or unduly burdensome. They also do not assert to have updated their privilege log with the legal file they have withheld. Nor have they identified which portions of their initial disclosures are responsive to these RFPs. The Court will thus compel a further response to the extent the Wellpath Defendants have responsive information in their custody or control. The Wellpath Defendants must also update their privilege log to include any documents they have withheld and identify which portions of their initial disclosures are responsive to these RFPs.

**RFP No. 7:**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect any mortality review, morbidity report, root cause analysis or any similar type of investigation, audit or review of the death of STEPHEN BURRELL and/or the facts and circumstances leading up to and surrounding his death. This request includes, but is not limited to:

      a. ALL DOCUMENTS and materials considered in connection with such review;
      b. ALL DOCUMENTS and materials consulted in connection with such review;
      c. ALL DOCUMENTS and materials produced, created or authored by my [sic] PERSON in connection with such review, including notes.

**RFP No. 8**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect when mortality reviews, morbidity reports, root cause analysis, or any similar type of investigations, audits or reviews are to be conducted, the purpose(s) for which they are to be conducted, the manner in which they are to be conducted and the PERSONS who are to conduct them.

**RFP No. 9:**
Produce all mortality reviews, morbidity reports, root cause analyses, or any similar type of investigations, audits or reviews RELATED TO any deaths in the CITY JAIL.

(ECF No. 112 at 16-17).

The Wellpath Defendants initially objected to RFPs 7 and 8 for being overbroad and on attorney client privilege and work product grounds, but nonetheless identified responsive documents. (*Id.*). They objected to RFP 9 for being overbroad by requesting information related to "any" deaths. (*Id.*). The Wellpath Defendants supplemented each of their responses with a privilege log. (*Id.*).

Plaintiffs argue that The Wellpath Defendants' responses to these RFPs are boilerplate and fail to state whether responsive documents have been withheld. (*Id.*). The Wellpath Defendants do not respond regarding these RFPs. Regarding The Wellpath Defendants' objection to RFP 7 for overbreadth in scope and time, the Court agrees with Plaintiffs that this objection is unsupported. Because the request is limited to documents concerning Burrell, it is inherently limited in scope and time. The Court will thus compel a further response to this RFP to the extent the Wellpath Defendants have further responsive documents. Additionally, Plaintiffs' argument that the Wellpath Defendants have not stated whether responsive documents have been withheld appears to have been addressed by the Wellpath Defendants' supplement containing a privilege log. To the extent the Wellpath Defendants have not updated that log, they must do so.

Regarding RFP 8, the Wellpath Defendants' overbreadth objection is unsupported. But on the other hand, Plaintiff has not argued why the Wellpath Defendants' response identifying responsive documents is otherwise insufficient. The Wellpath Defendants have also produced a privilege log. The Court will thus compel a response to this request to the extent the Wellpath Defendants have further responsive documents. The Wellpath Defendants must also update their privilege log to the extent they have withheld more information responsive to RFP 8.

Finally, regarding RFP 9, the Court finds the Wellpath Defendants' objection to be meritorious. Plaintiffs have not carried their burden of explaining why the mortality reviews, morbidity reports, root cause analyses, or other investigations into *any* death in the jail are relevant or proportional to their case. While the Wellpath Defendants have not responded in their brief, the Court does not find this RFP, as its written, to be proportional because it is unbounded in time. It thus narrows this request to five years. The Wellpath Defendants must supplement their response to RFP 9 to include responsive information in their custody or control for any death in the jail that took place in the five years preceding Burrell's death.

> **RFP No. 12:**
> Produce all documents and materials that REFER TO, RELATE TO, or reflect any investigations, audits or reviews by any person or entity RELATING TO or arising from inmate or detainee deaths, the conditions of confinement, or medical or mental health care at the CITY JAIL since WELLPATH began providing services at the CITY JAIL.
>
> (ECF No. 112 at 16-17).

The Wellpath Defendants objected that RFP 12 is unduly burdensome, vague, and not proportional. (*Id.*). They added that they were "not apprised of all information related to deaths at City Jail" and that they objected to the RFP to the extent it requested attorney client privileged or work product protected documents. (*Id.*). The Wellpath Defendants then supplemented with a privilege log. (*Id.*).

Plaintiffs argue that the Wellpath Defendants' response improperly contains boilerplate objections and that the response that the Wellpath Defendants are not "apprised" of deaths at the jail is evasive because the Wellpath Defendants provide health services there. (*Id.* at 17). They

add that the Wellpath Defendants do not specify what documents they have withheld. (*Id.*). Plaintiffs assert that prior deaths are relevant to their *Monell* pattern and practice claims. (*Id.*). The Wellpath Defendants respond that a *Monell* claim does not entitle Plaintiffs to *carte blanche* discovery. (ECF No. 116 at 14). Plaintiffs reply that the Wellpath Defendants' argument regarding *carte blanche* discovery "does nothing to explain or justify Wellpath's boilerplate objections." (ECF No. 120 at 9).

The Court grants Plaintiffs' motion to compel a further response to this RFP but narrows its scope. Plaintiffs have met their burden of explaining that the information sought is relevant to their claims and the Wellpath Defendants' arguments in response are conclusory. On the other hand, the request is unlimited in time. The Court thus grants Plaintiffs' motion to compel a further response to this request but narrows it to the five years preceding Burrell's death. The Wellpath Defendants must also update their privilege log to the extent they withhold responsive information.

**RFP No. 14:**
Produce all orientation manuals and other manuals that RELATE TO, REFER TO, or reflect the work of any WELLPATH employee or agent employed or located at the CITY JAIL during the SUBJECT CONFINEMENT and PRIOR CONFINEMENTS.

(ECF No. 112 at 17-19).

The Wellpath Defendants objected that the RFP is vague as to "other manuals" and not proportional. (*Id.*). They added that they would "produce the specific portions of [Wellpath's] policy and procedure manuals that are relevant to the clams made in this case." (*Id.*). The Wellpath Defendants then supplemented with a list of documents under a protective order. (*Id.*).

Plaintiffs argue that the Wellpath Defendants' responses are improperly boilerplate and improperly attempt to dictate what is relevant to Plaintiff's claims. (*Id.*). Plaintiffs assert that the Wellpath Defendants must identify all policies they have withheld so that Plaintiffs can determine whether the policies are relevant. (*Id.*). The Wellpath Defendants respond that the request erroneously sought all procedures and policy manuals, without regard for whether the materials would be relevant to the case. (ECF No. 116 at 14). Plaintiffs reply that the Wellpath Defendants

fail to explain what material is withheld and how they determined which manuals are relevant. (ECF No. 120 at 9).

The Court finds that the information sought by this RFP is relevant and proportional. The Wellpath Defendants have not developed their argument that the request is overly broad, unduly burdensome, or irrelevant. This is particularly true because it refers only to Wellpath employees working at the jail while Burrell was housed there, meaning the request is inherently limited in time and scope. The Court thus grants Plaintiffs' motion to compel a further response to this RFP to the extent that the Wellpath Defendants have withheld responsive documents.

> **RFP No. 29:**[5]
> Produce all training records for REGINA ELIZONDO.
>
> **RFP No. 30:**
> Produce the personnel or contractor file of REGINA ELIZONDO, including all training records, contracts, complaints, grievances, performance reviews, disciplinary records, records reflecting dates of hire and change in title or position, records reflecting policies, procedures, and protocols, and records reflecting bonus compensation and correspondence or documentation relating thereto. Exclude from YOUR answer purely personal INFORMATION such as date of birth, home address, social security number, and INFORMATION that is purely related to non-bonus compensation and employment benefits.

(ECF No. 112 at 19-21).

The Wellpath Defendants responded to RFP 29 with responsive documents. (*Id.*). They responded to RFP 30 with an objection that the RFP was duplicative, intended to harass, and would violate their employees' privacy. (*Id.*). Nonetheless the Wellpath Defendants responded to RFP 30 with the employee file and training courses. (*Id.*).

---

[5] RFPs 17 through 30 request the personnel and training files for each of the individual Wellpath Defendants, including Shawn Mapleton, Michael Popov, Virgilio Padilla, Francis Boddie-Small, Ebony-Michelle D. Garner, Vicky Morgan, and Regina Elizondo. (ECF No. 112 at 19). Because the requests are the same other than the name, the Court addresses only the RFPs related to Elizondo out of this set of requests for production.

Plaintiffs argue that the Wellpath Defendants' objections are boilerplate, and that the Wellpath Defendants intentionally conflate training records with personnel files. (*Id.*). They add that the documents the Wellpath Defendants did produce are indecipherable, contextless, and lack documents like employment applications and disciplinary records. (*Id.*). Plaintiffs assert that the privacy interests the Wellpath Defendants raise as reason to withhold documents could be addressed by the parties' existing protective order and confidentiality designations. (*Id.*).

The Wellpath Defendants respond that the requests asking for training materials and employee files including training materials—like RFPs 29 and 30—are duplicative, thus they did not conflate the two. (ECF No. 116 at 17). Regarding Plaintiffs arguments that the responsive documents are missing items, the Wellpath Defendants explain that they did not withhold any information other than redactions in the files. (*Id.*). The Wellpath Defendants add that they did not supplement the responses because they were already complete. (*Id.* at 18). Plaintiffs reply that "Wellpath declines to respond to Plaintiff's argument that Wellpath's Responses and objections violate the Federal Rules. Accordingly, all of Wellpath's boilerplate objections should be deemed abandoned." (ECF No. 120 at 10).

The Court declines to compel a further response to these RFPs because the Wellpath Defendants have asserted to have produced all responsive documents. Even if the Wellpath Defendants objections were waived, it appears that there is nothing further to compel because the Wellpath Defendants claim that they did not withhold anything other than redactions. The Court also agrees with the Wellpath Defendants that the requests overlap. Plaintiffs have not provided any reason to believe that the Wellpath Defendants are withholding responsive records. The Court thus denies Plaintiffs' motion to compel a further response to RFPs 17 through 30.

**RFP No. 31:**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect any prospective risk-management plan or analysis instituted or performed with regard to inmate or detainee deaths at the CITY JAIL since WELLPATH began providing services at the CITY JAIL.

**RFP No. 32:**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect any quality improvement plan or analysis instituted or performed with regard to medical or mental health care or the conditions of confinement at the CITY JAIL since WELLPATH began providing services at the CITY JAIL.

(ECF No. 112 at 21).

The Wellpath Defendants objected to RFP 31 as being disproportionate and vague as to the phrase "risk management plan." (*Id.*). They added that they would produce "specific portions of [Wellpath's] policy and procedure manuals that are relevant to the claims made in this case," upon entry of a protective order. (*Id.*). They did not object to RFP 32 but explained that they would supplement their response upon entry of a protective order. (*Id.*).

Plaintiffs argue that the Wellpath Defendants' objections are improperly boilerplate. (*Id.*). The Wellpath Defendants respond that, since the parties entered a protective order, Defendants provided "dozens of additional policies" and reference their response to RFP 14. (ECF No. 116 at 18). Plaintiffs reply that the Wellpath Defendants have waived their arguments. (ECF No. 120 at 10).

Neither party's arguments are fully developed. As a result, the Court has no reason to doubt the Wellpath Defendants' assertion that they have produced responsive documents. It appears, however, that the Wellpath Defendants have not met their obligation to supplement their responses to RFPs 31 and 32 as required under Federal Rule of Civil Procedure 26(e). The Court thus grants Plaintiffs' motion to compel a further response to this in part and will require that the Wellpath Defendants supplement their responses to these requests to identify the responsive documents they have since produced.

**RFP No. 33:**
Produce all organizational charts or other DOCUMENTS and materials that REFER TO, RELATE TO or reflect the organization or employment structure or chain of command at the CITY JAIL during the SUBJECT CONFINEMENT and PRIOR CONFINEMENTS.

(ECF No. 112 at 22).

The Wellpath Defendants initially responded that they lacked information responsive to the RFP. (*Id.*). They then supplemented to include an objection that the RFP was overbroad because it asked for information during all of Burrell's confinements. (*Id.*). The Wellpath Defendants also objected that the RFP was overbroad because it asked for "the employment structure and chain of command for the City Jail as a whole, rather than Wellpath, LLC's work in the City Jail." *Id.*

Plaintiffs argue that the Wellpath Defendants' response that the documents do not exist must be false because Wellpath is a multi-billion-dollar corporation that must maintain some record of its internal employment structure. (ECF No. 112 at 22). Plaintiffs add that the Wellpath Defendants' objections are meaningless boilerplate. (*Id.*). The Wellpath Defendants respond that although they conceded that the documents exist in their supplement, the documents are irrelevant because the corporate structure of Wellpath has nothing to do with the supervision of the local employees working at the jail. (ECF No. 116 at 19). They add that the request seeks documents from other organizations to which the Wellpath Defendants do not have access. (*Id.*). Plaintiffs reply that the Wellpath Defendants have waived their arguments. (ECF No. 120 at 10).

The Court grants Plaintiffs' motion to compel in part. Plaintiffs' arguments are underdeveloped, but on the other hand, the Wellpath Defendants have conceded that certain responsive documents exist. The Court does not find documents related to Wellpath's corporate structure—or to the employment structure of third parties—to be relevant or within the Wellpath Defendants' control. However, to the extent the Wellpath Defendants have documents representing Wellpath's local chain of command during each of Burrell's confinements, they must produce them.

**RFP No. 42:**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect any internal budget for operations or services RELATED TO inmate or detainee medical or mental health care at the CITY JAIL, including, but not limited to, any actual or projected budget, budget line-items, budget breakdown by category, and DOCUMENTS or materials that REFER TO, RELATE TO, or reflect an analysis of actual costs and expenses for the years 2015 through 2019.

**RFP No. 43:**
Produce all DOCUMENTS and materials that REFER TO, RELATE TO, or reflect the expression or communication of any concerns or questions RELATING TO budget overages (whether in whole or specific to any line-item or category of expense) in connection with any agreement for inmate or detainee medical or mental health care at the CITY JAIL for the years 2015 though 2019.

(ECF No. 112 at 22-23).

The Wellpath Defendants objected to RFPs 42 and 43 for being overbroad and irrelevant. (*Id.*). They supplemented their responses to both RFPs to add that they also objected to the requests as "overbroad in requesting four years of documents." (*Id.*). Plaintiffs argue that the Wellpath Defendants' responses are improperly boilerplate and erroneously claim that the requests are not relevant. (*Id.*). Plaintiffs explain that the documents are relevant to their *Monell* claims that the Wellpath Defendants go to extreme lengths to reduce the quality of their care to reduce overall expenditures associated with operating facilities like the jail. (*Id.*). They add that four years of documents is proportionate. (*Id.* at 24). The Wellpath Defendants argue that Plaintiffs' *Monell* claims do not entitle them to *carte blanche* discovery. (ECF No. 116 at 20). They explain that their supplement was intended to clarify why they objected to the request. (*Id.*).

The Court grants Plaintiffs' motion to compel a response to these RFPs. The Wellpath Defendants have not supported their objections that these requests are overly broad or unduly burdensome. They only argue that the requests are irrelevant. But Plaintiffs have pointed out that the documents are relevant to their *Monell* claims and proportional because they are limited to four years. The Court agrees and grants Plaintiffs' motion to compel a response to RFPs 42 and 43.

### B.  *The Court denies Plaintiffs' motion for attorneys' fees.*

Plaintiffs argue that the Court should award them their attorneys' fees incurred in bringing the motion to compel. (ECF No. 114 at 24). The Wellpath Defendants respond that they have attempted through the meet and confer process to provide Plaintiffs with the documents they sought, making an award of expenses unjust. (ECF No. 116 at 21). Plaintiffs reply that the Wellpath Defendants failure to disclose the documents sought is not substantially justified

because their objections are "contrary to well-settled principles and case law, as well as the express terms of Rule 34." (ECF No. 120 at 10).

"When a court grants a motion to compel, the victor is entitled to expenses—including attorneys' fees—unless the loser was substantially justified or the imposition of sanctions would be unjust." *Kiessling v. Det. Rader P#6099*, No. 2:16-cv-0690-GMN-NJK, 2018 WL 1401972, at *4 (D. Nev. Mar. 20, 2018) (citing Fed. R. Civ. P. 37(a)(5)(A)).  Discovery conduct is substantially justified "if reasonable people could differ on the matter in dispute." *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 435 (D. Nev. 2006).  The losing party has the burden of establishing substantial justification or unjust circumstances.  *E.g., Wood v. GEICO Casualty Co.*, No. 2:16-cv-00806-GMN-NJK, 2016 WL 6069928, at *1 (D. Nev. Oct. 14, 2016).  The district court has great latitude in imposing discovery sanctions.  *Lew v. Kona Hosp.*, 754 F.2d 1420, 1425 (9th Cir. 1985).

Attorneys' fees are not warranted here because the Wellpath Defendants' position is substantially justified.  The Wellpath Defendants have not outright refused to respond to Plaintiffs' requests but have supplemented their responses.  And while Plaintiffs disagreed with the sufficiency of those supplements, considering that Plaintiffs, the Wellpath Defendants, and the Court have interpreted the proper scope of these requests differently, the Court cannot find that reasonable minds could not differ on this motion.  Additionally, the parties disagree over the outcome of the meet and confer and whether certain requests were narrowed, making it difficult to decide whether the Wellpath Defendants' supplements were consistent with what the parties discussed.  Finally, the Court has granted in part and denied in part Plaintiffs' motion, rather than granting it in its entirety.  The Court thus denies Plaintiffs' motion for attorneys' fees.

**IT IS THEREFORE ORDERED** that Plaintiffs' motion to compel (ECF No. 112) is **granted in part and denied in part** as stated herein.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for attorneys' fees (ECF No. 114) is **denied.**

DATED: July 26, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE